IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Steven Lee Hewitt, | ) | C/A No. 0:12-2373-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Robert Ward; Wille T. Smith; Wayne McCabe; | ) | |
| Officer Helms, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

The plaintiff, Steven Lee Hewitt ("Hewitt"), a self-represented state prisoner, filed this action

pursuant to 42 U.S.C. § 1983.  This matter is before the court pursuant to 28 U.S.C. § 636(b) and

Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for

summary judgment.  (ECF No. 41.)  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975),

Hewitt was advised of the summary judgment and dismissal procedures and the possible

consequences if he failed to respond adequately to the defendants' motions.  (ECF No. 42.)  In

response, Hewitt filed a document entitled "Plaintiff's Motion for Defendants['] Motion for

Summary Judgment to be Denied."  (ECF No. 52.)  The defendants filed a reply.  (ECF No. 55.)

Having carefully considered the parties' submissions and the applicable law, the court concludes that

the defendants' motion should be granted and Hewitt's motion should be denied.

## BACKGROUND

Liberally construed, Hewitt's Complaint raises claims on a myriad of issues that occurred

during his incarceration in Lieber Correctional Institution ("Lieber") in Ridgeville, South Carolina.

Hewitt alleges that inmates in Ashley A-Side, considered the worst quarters in the facility, have been

on 24/7 lock down since a prison riot in early 2012.  According to Hewitt, the prisoners are fed four sandwiches with processed meat and outdated bread per day.  He alleges that the sandwiches cause stomach pain, that the prison officials never provide fruits or vegetables for meals to the inmates in Ashley, and that the inmates in the other parts of Lieber receive three hot meals per day.  Hewitt further alleges that the rooms have no mirrors, tables, chairs, lockers, or other furnishings, and that the inmates in lock down are locked in their rooms all day every day, while the other inmates get time for outside recreation.  Hewitt also claims that the prisoners in Ashley A-Side also do not have access to phones, cleaning supplies, the law library, or chapel services.

 Hewitt also claims that Ashley, the "worst" dormitory in the institution, is where inmates are sent as "punishment," including inmates with mental health problems, even though there are quarters specifically for inmates with mental health problems.  He alleges that there are never any counselors sent to Ashley, and the guards stationed inside are not equipped to handle mental issues.

Hewitt claims that he and the other ninety-six prisoners[1] have gone through the grievance process and have yet to receive any responses to their grievances.  (See generally Compl., ECF No. 1.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing

---

[1] With regard to the other ninety-six inmates, the court has previously informed Hewitt that "to the extent Plaintiff wishes to bring a class action lawsuit on behalf of himself and the other prisoners confined to Ashley A-side, he cannot do so."  (ECF No. 13 at 1.)



to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Defendants' Motion for Summary Judgment**

**1.    Official Capacity Claims**

To the extent that Hewitt is suing the defendants in their official capacities for monetary relief, they are entitled to summary judgment.  The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State."  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, the Correctional Institution defendants are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity.  See Will, 491 U.S. at 70-71.  Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court.  See S.C. Code Ann. § 15-78-20(e).  Accordingly, to the extent the defendants are sued in their official capacities, they are immune from suit.  Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

2.     **Conditions of Confinement**

The crux of Hewitt's claims is that the conditions in the Ashley dormitory of Lieber violate his constitutional rights. According to Hewitt's Complaint, following a riot in early 2012, the inmates in Ashley have been on 24-hour lock down. (ECF No. 1 at 3.) The inmates are only given a few unappetizing sandwiches with processed meat per day with no fruits or vegetables (id. at 4); they are not allowed any recreational time outside (id. at 5); they have no access to phones, chapel services, or the law library, and no cleaning supplies for their living areas. (Id. at 6-7.) In short, Hewitt's claims appear to concern the conditions in Ashley that have been created pursuant to prison lock-down procedures.

In support of their motion for summary judgment, the defendants have provided affidavit testimony from Willie F. Smith, Food Service Administrator for SCDC, who has knowledge of the South Carolina Department of Corrections's ("SCDC's") food service policies. (Smith Aff. ¶¶ 2-3, ECF No. 41-3 at 2.) Smith avers that following a riot at an SCDC institution that results in a unit being locked down, the warden contacts the Senior Food Director at the institution to determine the meals for the locked down unit. (Id. at ¶ 4.) Smith states that if the warden requests the meals to be served to inmates in their cells, bag meals will be prepared for them. (Id.) Smith avers that this is standard SCDC policy and procedure. (Id.)

In support of their motion for summary judgment, the defendants have also provided the affidavit of Joseph McFadden, the Warden of Lieber. (McFadden Aff. ¶¶ 2-3, ECF No. 41-5 at 2.) McFadden avers that Ashley was put on lock down following the January 2012 riot for safety and security concerns, and that this was necessary to protect the safety and security of the staff, the public, and the inmates. (Id.) McFadden further states that inmates on lock down may have their

food restricted to delivered meals, and that recreation is suspended. (Id. at ¶ 7, ECF No. 41-5 at 3.) However, McFadden also states that in-cell exercise information is given to inmates to help them maintain their muscle tone, and that health services are provided to the inmates to the extent that it is possible to keep the staff safe. (Id.) All of these procedures, McFadden avers, are compliant with standard SCDC policy. (Id. at ¶ 8.)

In Turner v. Safley, 482 U.S. 78, 89 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." To meet this standard, the Turner Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. Id. at 89-90.

In the instant case, viewing the facts in a light most favorable to Hewitt, he cannot show a violation of his rights based on the lock-down policies. The defendants have presented a legitimate and neutral objective in maintaining safety and security in the wake of a violent prison riot in the Ashley unit. Ensuring the safety of the staff, guards, and inmates in a prison is surely a legitimate governmental objective. Though the inmates are kept in very confined conditions, the prison still supplies them with food, opportunities to exercise, as well as continuing their medical treatment. Attempting to lessen the lock-down restrictions after a violent riot has occurred could put the staff, guards, other inmates, and potentially the public at a large risk of danger. Because the defendants



have presented evidence of the procedures in place in Ashley as conforming with SCDC policy, they appear to be an appropriate response to the rioting and safety concerns resulting from said riots.

To the extent that Hewitt alleges that he experienced cruel and unusual punishment because the defendants did not provide him with food that he preferred, because of the food's temperature, or because of the lack of variety of his meals, his claims fail as a matter of law. To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition or demonstrate a substantial risk of such serious harm resulting from his exposure to the challenged conditions. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Strickler, 989 F.2d at 1380-81.

It is well settled that prisoners have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well being of the



inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotations marks and citation omitted); see also Farmer, 511 U.S. at 833. The Constitution does not guarantee, however, food that is prepared and served in a culinarily pleasing manner. See Lunsford v. Bennett, 17 F.3d 1574 (7th Cir. 1994) (holding that allegations of cold, poorly prepared beans were insufficient to state a constitutional claim); LaMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (holding that a temporary diet of Nutraloaf did not rise to a constitutional violation); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); see also Williams v. Berge, 102 F. App'x 506, 507 (7th Cir. 2004) ("Prisoners have a right to adequate food, but not to food that is tasty or even appetizing[.]") (internal citations omitted). Prisoners simply cannot expect the "amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988); see also Lasure v. Doby, C/A No. 0:06-cv-1527, 2007 WL 1377694, *5 (D.S.C. May 8, 2007) (noting that plaintiff was "being held in a [] jail facility, not a hotel").

Because the SCDC procedures in place are meant to further a legitimate interest, and because no constitutional right is violated by mediocre food, Hewitt's claims must fail. Therefore, the defendants are entitled to summary judgment on these claims.

## C.     Other Claims

To the extent Hewitt is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

## RECOMMENDATION

For the above reasons, the court recommends that the defendants' motion for summary

judgment (ECF No. 41) be granted and Hewitt's motion (ECF No. 52) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 22, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).